UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

RICHARD H. CASTRO-BAEZ,

    Plaintiff,

v.

TYCO ELECTRONICS CORPORATION,

    Defendant.

Civil No. 10-2186 (JAF)

**OPINION AND ORDER**

In this diversity action, Plaintiff Richard Castro-Báez ("Plaintiff") sues his former employer, alleging wrongful dismissal in violation of 29 L.P.R.A. §§ 185a–185m ("Law 80"), as well as discrimination in violation of 29 L.P.R.A. § 146 ("Law 100"). (Docket No. 1.) Defendant Tyco Electronics Corporation ("Defendant" or "Tyco") moves for summary judgment (Docket Nos. 17; 18), and Plaintiffs do not oppose.

**I.**

**Factual Synopsis**

We begin by noting that Plaintiff has failed to oppose Defendant's statement of uncontested facts. Therefore, Defendant's statement of uncontested facts will be "deemed admitted." D.P.R.R. 56(e) ("Facts contained in a supporting or opposing statement of material facts . . . shall be deemed admitted unless properly controverted."); see also Borges ex rel S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 6 (1st Cir. 2010) (upholding district court's deeming order as "precisely the remedy that the local rule envisions for failures of compliance").

Civil No. 10-2186 (JAF)                                                                                                  -2-

Defendant is a Pennsylvania corporation, wholly owned by Tyco Electronics Limited, a Swiss corporation. (Docket No. 18 at 2.) Tyco is mainly dedicated to the design and manufacture of electronic, energy and computer products and components. (Id.)

In 2008, Tyco had only two salespeople working in Puerto Rico. (Id.) One of these two people was Plaintiff, who worked for the Communication Computer & Consumer Electronics Division ("CC&CE"). (Id.) The second person was Sara Moreno ("Moreno"), who worked for the Global Industrial and Commercial Division ("GIS"). These two divisions served different industries and territories, and focused on different products. (Id.) At the time of Plaintiff's discharge from the company, Plaintiff was fifty-three years old, and Moreno was thirty-seven. (Id. at 12.)

Plaintiff began working as a regular employee at AMP, Inc. in 1984. (Id.) On or around 1996, Tyco acquired AMP, Incorporated. (Id.) From 1984 to 1999, Plaintiff worked as a field engineer, first for AMP, then for Tyco. (Id.) In 1999, Plaintiff began to assume some sales responsibilities, which he took on full time in 2000, when he transferred to the position of sales engineer. (Id. at 4.) In 2002, Plaintiff was promoted to sales account executive and assigned to CC&CE. (Id.) As part of the CC&CE Division, Plaintiff served computer and conductivity system accounts. (Id. at 3.) These clients required high precision and high capacity electrical and computer components and products. (Id.) Moreno's client assignments included industrial, medical, aerospace and energy accounts. (Id.) In that position, Plaintiff was mainly in charge of selling the following products: Electrical connectors and switches, fiber optics and other cables, electronic components, computer boards, and other robotic machines. (Id.) In this position, Plaintiff admits, client relationships were "of the utmost importance for sales." (Id.)

Civil No. 10-2186 (JAF)                                                                                                      -3-

During 2007 and 2008, Plaintiff had only six active clients. (Id. at 5.) The biggest and most important client was Hewlett Packard, which accounted for ninety-three percent of Plaintiff's sales. (Id. at 5–6.) In 2008, though, Hewlett Packard announced that it was moving part of its Puerto Rico operations to Malaysia. (Id. at 6.) That same year, three of Plaintiff's five remaining clients also announced that they were closing, downsizing, or moving their Puerto Rico operations to other jurisdictions. (Id.) In the years 2006, 2007, and 2008, Plaintiff's sales totals amounted to the following: $16,723,966 in 2006, $11,332,029 in 2007, and $9,728,387 in 2008. (Id.) From 2006 to 2007, Plaintiff's sales decreased thirty-two percent; from 2007 to 2008, fourteen percent. (Id.)

Beginning in 2007, Plaintiff's supervisor told Plaintiff that he needed to identify and develop new accounts to compensate for the losses—actual and expected—resulting from the downsizing and closing of Plaintiff's key clients. (Id. at 7.) Unfortunately, Plaintiff did not develop any new clients or accounts. (Id.)

In October 2008, Moreno began to work for Tyco. (Id.) Moreno was the only sales engineer for GIC. (Id.) GIC and CC&CE, as stated above, were two completely different and independent divisions of Tyco. (Id.) Moreno and Plaintiff reported to different supervisors, occupied different office space, and sold different products to different clients in different industries. (Id.) In 2008, Moreno handled approximately sixty-three accounts, and obtained a thirty percent growth in annual sales billings. (Id. at 8.) In the same year, Moreno also won the President's Performance Award and other awards for her sales performance. (Id.)

On or around October 2008, Tyco announced plans to undertake a restructuring to cope with "the turmoil in the world's economy." (Id.) The restructuring plan was designed

Civil No. 10-2186 (JAF) -4-

to reduce costs and increase competitiveness, among other reasons. (Id.) As part of the restructuring, Tyco merged the CC&E and GIC divisions into one single division, called Communications & Industrial Solutions ("CIS"). (Id.)

In December 2008, Plaintiff received notice that his employment was being terminated as part of a company-wide reduction in force pursuant to Tyco's restructure. (Id.) Tyco stated that its actual and projected sales decrease, as well as the deteriorating global economy, motivated the reduction. (Id. at 9–10.) Approximately 174 Tyco employees, including Plaintiff, were terminated as part of that reduction in force. (Id.)

Moreno was not one of the employees terminated. (Id. at 12.) Tyco gave several reasons for deciding to retain Moreno instead of Plaintiff. (Id. at 9–10.) These included: Plaintiff's decreasing sales numbers since 2006; the loss of several of Plaintiff's clients; the option of servicing Plaintiff's clients from Tyco's offices in Pennsylvania; Moreno's increasing sales and strong performance; Moreno's relationship with several industrial customers with large growth potential; the large number of Moreno's sixty clients compared to Plaintiff's six; and the ease with which Tyco could transition Plaintiff's four remaining clients. (Id.) In August 2010, Plaintiff filed the present suit. (Docket No. 1.)

**II.**

**Summary Judgment Under Rule 56**

We must grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if it could be resolved in favor of either party and

Civil No. 10-2186 (JAF) -5-

"material" if it potentially affects the outcome of the case. <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004).

The movant carries the burden of establishing that there is no genuine dispute as to any material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). The movant may satisfy this burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . or other materials." Fed. R. Civ. P. 56(c)(1)(A). Furthermore, to establish the absence of a genuine dispute of material fact, the movant need not produce evidence but may instead point to a lack of evidence supporting the nonmovant's case. <u>See</u> Fed. R. Civ. P. 56(c)(1)(B); <u>see also</u> <u>Celotex</u>, 477 U.S. at 325. "Once the moving party has made a preliminary showing that no genuine [dispute] of material fact exists, the nonmovant must produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy [dispute]." <u>Clifford v. Barnhart</u>, 449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks omitted); <u>see also</u> Fed. R. Civ. P. 56(c)(1).

In evaluating a motion for summary judgment, we must view the record in the light most favorable to the nonmovant. <u>See</u> <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 150–51 (2000). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The "entry of a summary judgment motion as unopposed does not automatically give rise to a grant of summary judgment . . . . [We are] still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." <u>Aguiar-</u>

Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 25 (1st Cir. 2005) (citations and internal quotation marks omitted).

### III.

### **Summary Judgment Under Rule 56**

Law 80 applies to "[e]very employee in commerce, industry, or any other business or work place . . . , contracted without a fixed term, who is discharged from his/her employment without just cause." Soto v. State Indus. Prod., 642 F.3d 67, 74 (1st Cir. 2010) (quoting 29 L.P.R.A. § 185a). "Under Law 80, these employees are entitled to a form of severance known as a 'mesada,' which is calculated using a formula based on the employee's salary and years of service." Id. (citations omitted).

"If an employee is terminated for a reason that constitutes 'just cause' under the statute, the employer will not be liable under Law 80." Otero-Burgos v. Inter Am. Univ., 558 F.3d 1, 7–8 (1st Cir. 2009) (citing §§ 185a, b). "Just cause" may include "technological or reorganization changes," as well as "reductions in employment made necessary by a reduction in the anticipated or prevailing volume of production, sales or profits at the time of the discharge." § 185b. An employer that discharges an employee for one of these stated reasons must "retain those employees of greater seniority on the job . . . except . . . in those cases in which there is a clear and conclusive difference in favor of the efficiency or capacity of the workers compared, in which case the capacity shall prevail." § 185c.

Plaintiff argues that by discharging him and retaining Moreno, Defendant violated Law 80. (Docket No. 1-1 at 5.) Plaintiff alleges that Defendant "did not consider Plaintiff's

Civil No. 10-2186 (JAF) -7-

seniority" and that his discharge was "without just cause." (Id.) In response, Defendant argues that it had "good cause" for discharging Plaintiff under § 185b, due to Tyco's reorganization and decreasing sales. (Docket No. 17 at 4–6.) Defendant further argues that the "clear and conclusive" differences between Plaintiff's and Moreno's performance justified Plaintiff's discharge. (Id. at 7–11.) We agree with Defendant. The record evidence shows that Plaintiff's and Moreno's positions—serving different clients in different industries, with great differences in growth potential— "were not fungible." Pages Cahue v. Iberia Lineas Aereas de Espana, 82 F.3d 533, 540 (1st Cir. 1996). The uncontested evidence makes clear that the "relative efficiency of keeping [Moreno] in her position" justified Plaintiff's discharge, especially considering the "clear and conclusive" difference in the sales performance and capacities of the two employees. Id.; see also Cruz v. Bristol Meyers Squibb, 777 F. Supp. 2d 321, 338 (D.P.R. 2011) (finding "just cause" for discharging plaintiff with lowest efficiency ranking after corporate reorganization).

Plaintiff's Law 100 claim fares no better. To state a prima-facie case under Law 100, a plaintiff has the initial burden of: "1) demonstrating that he was actually or constructively discharged, and 2) alleging that the decision was discriminatory." Velasquez-Fernandez v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007) (quoting Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 16 (1st Cir. 2001)). If the plaintiff meets this "rather undemanding requirement, the burden of persuasion shifts to the employer to show, by a preponderance of the evidence, that it had 'good cause' for its action." Id. (citing Baralt, 251 F.3d at 16). "Law 100 and Law 80 employ identical standards for 'just cause.'" Baltodano v. Merck,

Civil No. 10-2186 (JAF) -8-

Sharp & Dohme (I.A.) Corp., 637 F.3d 38, 43 (1st Cir. 2011) (citing Alvarez-Fonseca v. Pepsi-Cola of P.R. Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998)).

Our finding above that Defendant has shown "just cause" for Plaintiff's discharge shifts the burden back to Plaintiff, who must show "that the employer's decision was motivated by age discrimination." Id. (quoting Cardona Jimenez v. Bancomercio de P.R., 174 F.3d 36, 43 (1st Cir. 1999)). It is at this stage that Plaintiff's claim fails, "because he has not 'proffered sufficient admissible evidence, if believed, to prove by a preponderance of the evidence . . . that the employer's justification . . . was merely a pretext for age discrimination.'" Id. (quoting Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995)). Defendant's business-related justifications for discharging Plaintiff are highly persuasive, and Plaintiff has provided no evidence suggesting these were pretext. "In the end, on the record presented here, there is simply no basis to infer that the legitimate business decisions made by [Plaintiff's] employer were motivated by age animus. Without such evidence," Plaintiff's claims under Law 100 "must fail as a matter of law." Id.

## IV.
## Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is hereby **GRANTED.** (Docket No. 17.) Plaintiff's complaint will be **DISMISSED WITH PREJUDICE.** (Docket No. 1.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 29th day of May, 2012.

                                                s/José Antonio Fusté
                                                JOSE ANTONIO FUSTE
                                                United States District Judge